EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROCK-IT CARGO USA, LLC.

Plaintiff,

-vs-

Case No.
Hon.

MARLIN TRANSPORT, INC,
a Michigan corporation, and
FRANKLIN RAY, jointly and severally,

Defendant.

---

Foster Swift Collins & Smith PC
By: Dirk H. Beckwith (P35609)
Attorneys for Rock-It Cargo USA, LLC.
28411 Northwestern Highway, Suite 500
Southfield, Michigan 48034
248.539.9918
dbeckwith@fosterswift.com

---

AFFIDAVIT OF MARY HUWALDT, ESQ.

STATE OF PENNSYLVANIA )
                                          ) SS
COUNTY OF LANCASTER   )

Mary Huwaldt, being first duly sworn, deposes and says:

1.     I am the general counsel for Rock-It Cargo USA, LLC ("Rock-It Cargo") and am authorized to make this Affidavit on its behalf. If sworn as a witness I have personal knowledge of the facts stated in this Affidavit.

2.     Marlin Transport, Inc. ("Marlin"), a vendor of Rock-It Cargo, by Frank Ray, its principal, approached Steve Maples of Rock-It Cargo and said Marlin was awarded a

55572:00002:2964418-1

contract with UPS to move a number of preloaded trailers to Tucson, Arizona, Chicago, Illinois, or Pittsburgh, Pennsylvania.

3.      On November 29, 2016, Marlin executed Rock-It Cargo's terms and conditions and began tendering loads.  Marlin promised to pay Rock-It's invoices upon receipt.

4.      Rock-It invoiced Marlin and on December 16, 2016, Marlin tendered a check to Rock-It Cargo in the amount of $117,442.68 as payment on the first set of invoices.  In reliance on the check, Rock-It continued tendering loads.

5.      Later the same day, December 16, 2016, Rock-It Cargo received notice from Marlin's bank that there had been a stop payment on the check.

6.      Rock-It Cargo contacted Marlin requesting the funds be wired; Marlin indicated there were clerical issues with his Bank which prevented the wiring of funds.

7.      On December 20, 2016, Marlin emailed Rock-It Cargo indicating that it was sending $151,417.68 by ACH transfer as payment on the current balance.  Marlin included a screen shot of the ACH transfer in the email.

8.      The ACH transfer never occurred.

9.      Rock-It Cargo placed a trailer which was on the road in a secured lot and, on December 22, 2016, I sent Marlin a letter advising that Rock-It Cargo was exercising its lien rights on the detained load.

10.     On December 23, 2016, Marlin claimed for the first time that it needed to receive all bills of lading prior to forwarding any money, even though Rock-It had been submitting bills of lading as they were received.

11.     On December 26, 2016, David Burgess ("Burgess"), the attorney for Marlin,

send an email to Rock-It Cargo stating:

> Per our telephone conversation last Friday, as soon as my client, Marlin
> Transport Inc. receives all the Bills of Lading from you company that reflect
> the completed loads your company handled for my client, I will make sure
> payment is remitted to your company in full.

12.     On December 27, 2016, Burgess again emailed Rock-It Cargo:

> Once these bills of lading are received and reviewed by my client, your
> company will receive payment for the completed loads.

13.     On December 27, 2016, Burgess wrote to Rock-It Cargo stating:

> When my client receives the bills of lading for all of the loads along with
> the return of his trailer intact with its contents undamaged, you will receive
> payment in full.

14.     Again, on December 27, 2016, Burgess wrote to Rock-It Cargo stating,

> As soon as we verify that the trailer and its contents are undamaged, my
> client will remit payment to your company.

15.     Rock-It Cargo subsequently learned that, without its knowledge or consent,

the trailer in question was removed from the secured lot and delivered to Marlin's

customer.

16.     A complete duplicate set of bills of lading was scanned and emailed to

Marlin on December 29, 2016.

17.     On January 3, 2017, I verified in an email to Burgess that Marlin has, for days,

been in possession of all of the bills of lading.

18.     Burgess then insisted he needed all of the bills of lading in his office, rather

than in Marlin's office, so he could personally review them – I immediately forwarded

scanned copies to him.

55572:00002:2964418-1

19.    Burgess then said Marlin has $40,000 to $50,000 outstanding "and wants to make sure they are reconciled before he pays your company in full." He promised that he would send Rock-It Cargo payment personally, "through my office this Friday. This will be a check sent out by FedEx."

20.    On Thursday, January 5, 2017, Burgess reiterated,

> I will be sending payment by cashier's check tomorrow by FedEx. When I get the tracking number I will forward it to you. There are three outstanding invoices per my client, so we will be sending payment for all but those which I believe totals approximately $217,000."

Burgess requested I not contact Marlin's customers as it would be a waste of time.

21.    On January 5, 2017, I requested that Burgess have his client wire the funds rather than sending a check, but he refused saying Marlin has had problems with wires in the past. Burgess says, "We will be sending payment by cashier's check and there will be no further discussion regarding this issue."

22.    On January 6, 2017 Burgess forwarded a copy of a FedEx label to me. The FedEx tracking system indicated a label had been generated but no package delivered to FedEx.

23.    On January 7, 2017, I requested the status of the FedEx package. Burgess forwarded an email from a Marlin employee claiming he dropped a FedEx envelope at the Detroit Metropolitan Airport.

24.    The FedEx package was never delivered. Burgess claimed they were working with FedEx to locate the package and offered to cancel the cashier's check which would take 48 hours. He asked if we would ACH Marlin's account as an alternative means of

payment. Rock-It does not have that capability and I asked him to cancel the check and wire the money.

25.   On January 11, 2017, I had a telephone conversation with Burgess in which I again asked him to cancel the check and reissued and requested evidence that a cashier's check was ever actually obtained.  Burgess said he would check into it and get back to me.

26.   On January 13, 2017 I again requested from Burgess evidence of the cashier's check and requested an accounting.  Burgess did not respond to this request.

27.   On January 13, 2017, I had a telephone conversation with a FedEx representative who told me they had no record of the referenced FedEx package having been received.

28.   No payment has been received.

_Mary Huwaldt_
Mary Huwaldt

Subscribed and sworn to before me
February 17, 2017.

_Kathleen N. Miller_
Notary Public
Lancaster County, Pennsylvania
My Commission Expires: 5/12/2020
Acting in Lancaster County

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Kathleen N. Miller, Notary Public
Lititz Boro, Lancaster County
My Commission Expires May 12, 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

EXHIBIT D

**From:** heseaton <heseaton@aol.com>
**To:** david29_1999 <david29_1999@yahoo.com>
**Subject:** Rock-It Cargo v. Marlin Transport; Amount Due: $252,017.69
**Date:** Tue, Jan 10, 2017 4:08 pm

Mr. Burgess,

This firm represents Rock-It Cargo and the purpose of this letter is to demand production of the accounting data your client is required to keep with respect to its brokerage of truckload freight.  See 49 C.F.R. 371.13.

That information includes on a load-by-load basis who was billed, how much, when the invoices were paid and to whom, and when payment was transmitted to Rock-It, the contracted party.

As you know, both you and your client have acknowledged that the full amount is due, owing and unpaid.  The regulations cited above give Rock-It the right to see and copy the relevant accounting data to ensure that funds Marlin received for services Rock-It provided are transmitted to Rock-It upon receipt and are not diverted for other purposes.  See *Parker Motor Freight, Inc. v. Fifth Third Bank,* 116 F.3d 1137 (6th Cir. 1997).

Please make the requested data available for copying at your office or Marlin's principal place of business on or before close of business on Thursday, January 12, 2017.

Yours truly,

Henry E. Seaton, Esq.
Seaton & Husk, L.P.
2240 Gallows Road
Vienna, VA 22182
703-283-4251
www.transportationlaw.net
heseaton@aol.com